J-A12007-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: C.M.H., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.H., FATHER, | |
| Appellant | No. 2090 MDA 2014 |

Appeal from the Decree entered November 12, 2014,
in the Court of Common Pleas of Susquehanna County, Orphans'
Court, at No(s): O.C. 043-2013

BEFORE:  BOWES, DONOHUE, and ALLEN, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED MAY 27, 2015**

B.H. ("Father") appeals from the decree in the Court of Common Pleas of Susquehanna County involuntarily terminating his parental rights to his daughter, C.M.H., born in June of 2011.[1]  Upon careful review, we affirm.

The orphans' court set forth the factual and procedural history of this matter as follows, in relevant part.

> [C.M.H.] came into placement on or about August 10, 2011 due to physical abuse of the child by the Mother with legal custody vesting in Susquehanna County Children and Youth Services [("CYS")] . . .  and such custodial status continues to this date.
>
> Since October 4, 2011, C.M.H. has resided with [A.B.], her husband [(collectively, "Foster Parents")], and their six (6) other children.  C.M.H. is strongly bonded to the [Foster Parents] and refers to them as "mom" and "dad."

---

[1] M.P. ("Mother") voluntarily relinquished her parental rights to C.M.H. Mother is not a party to this appeal.

[Father] was incarcerated while C.M.H. was in placement until January 2014 and he has been in and out of foster care and prison since he was thirteen (13) years old.

On June 10, 2013, [CYS] filed a Petition to Confirm Consent of the parental rights of Mother after the Mother executed a Consent to Adoption in accordance the Adoption Act, 23 Pa.C.S. [§] 2711, on April 8, 2013.

A hearing over both Petitions took place on October 13, 2013.

Subsequently, this Court filed an Order and corresponding Opinion denying the Petition for Involuntary Termination of Parental Rights because we found that "the positive actions by [Father] while incarcerated to prepare to parent more fully C.M.H. preclude us from finding by clear and convincing evidence that [Father's] parental rights should be terminate[d] at the present." Court's Slip Op., 10/17/13.

[Father] exhibited the intention that he would complete all the necessary requirements in order to re-enter C.M.H.'s life permanently.

. . . .

This Court executed a Decree Granting Voluntary Relinquishment of Mother's parental rights on November 13, 2013.

Then, on May 28, 2014, [CYS] filed another Petition for Involuntary Termination of Parental Rights . . . against [Father] [pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8)].

Trial Court Opinion, 11/12/14, at 2-3.

The orphans' court held the evidentiary hearing on October 27, 2014, during which CYS presented the testimony of Deanna Wasko, the CYS caseworker, and A.B., the foster mother. Father testified on his own behalf.

J-A12007-15

By decree dated November 12, 2014, the orphans' court involuntarily terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).  On December 9, 2014, Father filed a notice of appeal.  On December 12, 2014, Father filed a concise statement of errors complained of on appeal.[2]

On appeal, Father raises the following questions for our review:

1. Did [CYS], prove by clear and convincing evidence the conditions prescribed by 23 Pa.C.S.A. § 2511(a)(1) existed with respect to [Father]?

2. Did [CYS], prove by clear and convincing evidence the conditions prescribed by 23 Pa.C.S.A. § 2511(a)(2) existed with respect to [Father]?

3. Did [CYS], prove by clear and convincing evidence the conditions prescribed by 23 Pa.C.S.A. § 2511(a)(5) existed with respect to [Father]?

4. Did [CYS], prove by clear and convincing evidence the conditions prescribed by 23 Pa.C.S.A. § 2511(a)(8) existed with respect to [Father]?

Father's brief at 4.[3]

_____

[2] Father failed to comply with Pa.R.A.P. 1925(a)(2)(i) and (b) by not filing the concise statement of errors complained of on appeal simultaneously with the notice of appeal.  However, we deem Father's procedural misstep harmless because it was not prejudicial to any party. *See In Re K.T.E.L.,* 983 A.2d 745, 747 (Pa.Super. 2009) (holding that the failure to file a concise statement of errors complained of on appeal with the notice of appeal will result in a defective notice of appeal, to be disposed of on a case by case basis).

[3] The guardian *ad litem* asserts that the orphans' court properly terminated Father's parental rights.

- 3 -

We review the termination decree according to the following standard:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by § 2511 of the Adoption Act, which requires a bifurcated analysis:

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

- 4 -

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007). The burden is on the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa.Super. 2009).

Pursuant to *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*), this Court need only agree with any one subsection of 23 Pa.C.S. § 2511(a) in order to affirm the termination of parental rights. Instantly, we conclude the trial court properly terminated Father's parental rights pursuant to § 2511(a)(2) and (b), which provide as follows:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions

- 5 -

described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

To satisfy the requirements of § 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003). The grounds for termination of parental rights under § 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002).

With respect to § 2511(b), this Court has explained the requisite analysis as follows:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that

- 6 -

bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id*. at 63.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa.Super. 2010).

On appeal, Father argues that CYS did not give him a reasonable amount of time after his release from prison to "remove any incapacity, neglect or refusal on his part" in providing for C.M.H.'s physical and mental well-being. Father's brief at 13-14. Father further states, "[t]his is particularly true when considering the obstacles before him, his limited resources and [CYS]'s lack of 'reasonable' assistance." *Id*. at 14. We disagree.

In explaining its decision to terminate Father's parental rights pursuant to § 2511(a)(2), the orphans' court stated, in part, that "we denied [CYS]'s first Petition for Involuntary Termination of Parental Rights because [Father's] actions in prison evidenced his intent to maintain a relationship with the child. [Father's] actions after his release, however, have made it clear that he did not carry through with those intentions." Trial Court Opinion, 11/12/14, at 6.

The record reveals that Father was released from prison on January 18, 2014. N.T., 10/27/14, at 7. Deanna Wasko, CYS caseworker, testified that Father was offered weekly supervised visits with C.M.H. after his

release, but he only participated in three visits, on January 30, 2014, February 13, 2014, and February 21, 2014. *Id*. at 7-8, 16. She testified that Father did not attend his visit in March of 2014. *Id*. at 8. Ms. Wasko recounted on direct examination her last telephone conversation with Father, as follows, in relevant part:

> A. . . . I did get a phone call from [Father] yelling at me at one time to not call him anymore and not talk to him, that just to talk to his lawyer and - -
>
> THE COURT: When was that?
>
>     . . . .
>
> Mrs. WASKO: In March. It was around the . . . beginning of March. He didn't want to talk to me, he was very angry, and - - I never heard from him again.

*Id*. at 12. Significantly, Ms. Wasko testified that, in the beginning of March of 2014, she learned that Father is an indicated sex offender due to an incident involving his commission of a sexual offense against his eight-year-old stepsister when he was fifteen or sixteen years old.[4] *Id*. at 11-12, 22.

Ms. Wasko then noted that Father did not appear for a permanency review hearing in April of 2014. *Id*. at 9-10. She added that Father failed to comply with the directives in the permanency review order to complete a drug and alcohol evaluation, attend and successfully complete an agency-approved parenting program, provide documentation and/or copies of

---

[4] Father implied in his testimony that the incident occurred in Lackawanna County. N.T., 10/27/14, at 56.

certificates of completion of the programs, and cooperate with all the general protective and placement services provided to him and C.M.H. *Id*. at 12-13. Ms. Wasko explained that by the next review in August of 2014, CYS had learned that Father had been re-incarcerated in June of 2014 for a parole violation. *Id*. at 14.

Ms. Wasko also outlined the actions that CYS believes warrants terminating Father's parental rights. The following exchange is instructive.

> Q. And why is it you don't think [Father] can [meet C.M.H.'s needs]?
>
> A. [Father] has had opportunity. As I recall, when he was in his first incarceration when we became involved, on his video conferencing, he stated when he got out he was ready to do what he needed to do, he was going to be the dad he needed to be, he was going to cooperate, he was going to do all of those things. He got out in January of 2014, and he did 3 visits. He was offered visits weekly if he wanted them. He did not keep in contact with [CYS]. In March, he just disappeared. He did not make any contact, he didn't come around, he didn't call for visits, he did nothing. He didn't show up to the only hearing that he could show up to on his own, he didn't even show up to be part of the hearing. [Father] has been back in jail since that first time. He has a parole violation. He is back with [Mother] who voluntarily terminated her rights. . . . [Father] told me himself that he wasn't involved with her when he actually was.

*Id*. at 16-17.

Additionally, as it relates to Father's attempts to rectify the conditions that led to his parental incapacity, *i.e.*, his apathy and inaction, Father testified to the following. At the time of his release from prison on January 18, 2014, he had a sentence of two years of probation, lasting from August

of 2013, to August of 2015, for a separate conviction involving theft. *Id*. at 35, 48-49. Upon Father's release in January of 2014, he went to live with his brother, his brother's fiancée, and her children in Carbondale, in Lackawanna County, Pennsylvania. *Id*. at 37. After approximately two months of residing with his brother, Lackawanna Children and Youth Services told him he could not reside there because the children of his brother's fiancée resided there.[5] *Id*. Though he resided in an apartment across the street from his brother's residence, Father "ended up losing that place because I didn't have enough money. . . ." *Id*. at 38. His probation was subsequently revoked for not reporting within 72 hours his change of address and job status. *Id*.

Father then testified that he ran from the state parole authorities in March of 2014, but turned himself in on June 9, 2014.[6] *Id*. at 38-39. During that time-period, Father resided with Mother. *Id*. at 39. Father continued to reside with Mother at the time of the hearing in a household that also included Mother's former paramour,[7] G.D. III, and his wife and four

---

[5] Although Father did not clarify why Lackawanna County Children and Youth Services did not allow him to continue living with his brother, his brother's fiancée, and her children, we assume it is because of Father's indicated sexual offender status.

[6] Father was re-incarcerated between June 9, 2014 and October 9, 2014. N.T., 10/27/14, at 47.

[7] Mother's dalliance with G.D. III bore a daughter. N.T., 10/27/14, at 41.

- 10 -

minor children. *Id*. at 39-40. Lackawanna County Children and Youth Services have placed a restriction on him that he not be alone with any of G.D. III's four children. *Id*. at 40.

Significantly, Father testified that Mother recently gave birth to his son, who was still in the hospital at the time of the termination hearing, and that he and Mother are giving custody of that child to G.D. III and his wife. *Id*. at 40-41. Further, Father also testified that he is engaged to marry Mother. *Id*. at 57.

Finally, Father offered the following in his testimony regarding his supervised visits with C.M.H. after his release from prison in January of 2014. Scheduled visits occurred at the office of CYS, located in Susquehanna County, and he lived in Carbondale, in Lackawanna County, which was a driving distance of 45 to 60 minutes. *Id*. at 44. His father drove him to the visits, and he had to pay for the gas. *Id*. The visits were a financial burden, and Father could not afford transportation by car to CYS every one or two weeks. *Id*. at 63. Though he requested that CYS move the visits to Lackawanna County, but CYS denied Father's bid. *Id*. at 45.

Finally, Father testified as follows on direct examination:

Q. How do you view your relationship with [CYS] at this point?

A. At this point . . . there is no relationship with [CYS]. I don't get along with them for numerous reasons. . . .

*Id*. at 47-48.

Based on the foregoing testimonial evidence, we conclude that the orphans' court did not abuse its discretion in involuntarily terminating Father's parental rights pursuant to § 2511(a)(2). Indeed, Father's incapacity, neglect, or refusal has caused C.M.H. to be without essential parental care, control, or subsistence necessary for her physical or mental well-being since she was two months old. Further, the causes of Father's incapacity, neglect, or refusal cannot or will not be remedied in that, despite his promise while in prison at the time of C.M.H.'s placement to do all that is necessary to meet C.M.H.'s needs upon his release, Father failed to do so. CYS filed the second petition for involuntary termination of Father's parental rights on May 28, 2014, more than four months after Father's initial release from prison. By the time of the termination hearing on October 27, 2014, Father was still unable to provide C.M.H. with essential parental care, control, or subsistence necessary for her physical and mental well-being.

Further, we reject Father's assertion that his conduct does not warrant termination pursuant to § 2511(a)(2) because CYS failed to provide him with "reasonable assistance." Father's brief at 14. In *In re D.C.D.*, 105 A.3d 662 (Pa. 2014), our Supreme Court held that neither § 2511(a)(2) nor § 2511(b) "requires a court to consider the reasonable efforts provided to a parent prior to termination of parental rights." *Id*. at 672. Therefore, Father's issues on appeal fail.

Although Father does not present an issue on appeal with respect to § 2511(b), we review the trial court's needs and welfare analysis in an abundance of caution and observe that no parental bond exists between C.M.H. and Father. Rather, a parental bond exists between C.M.H. and her kinship foster parents, with whom she has resided since October of 2011, when she was four months old.[8] N.T., 10/27/14, at 5. During the hearing, Ms. Wasko testified that C.M.H. "is completely bonded to [Foster Parents]. That is her mom and her dad, as far as she's concerned. They are willing to adopt her and give her permanency. . . . They do everything that a child needs a parent to do and she - - absolutely adores them." *Id*. at 15-16. Accordingly, we find that the orphans' court did not abuse its discretion by concluding that terminating Father's parental rights will serve the developmental, physical, and emotional needs and welfare of C.M.H. *See In re B., N.M.*, 856 A.2d 847, 856 (Pa.Super. 2004) (stating "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment"). We affirm the decree terminating Father's parental rights to C.M.H. pursuant to 23 Pa.C.S. § 2511(a)(2) and (b).

---

[8] C.M.H.'s foster mother is a distant cousin of Mother. N.T., 10/27/14, at 5-6.

Decree affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/27/2015